*1104 OPINION OF THE COURT
Lizbeth González, J.
Plaintiff The Board of Managers of the Sailmaker at City-Island Condominium moves pursuant to CPLR 3212 (b) for an order granting summary judgment against defendants Paul Laddomada, Maura Mandrano and Schofield Marina LLC, striking the defendants’ answer and scheduling a damages hearing. Defendants cross-move for a stay pending arbitration.
The Sailmaker at City Island Condominium is located at 170-190 Schofield Street on the east coast of City Island, abutting City Island Harbor in Long Island Sound. The Condominium consists of 34 residential apartments designated as residential units; 40 boat slips designated as marina units; 18 parking spaces designated as parking units located inside the first level of the residential building; and a lower level parking lot adjacent to the marina. Defendants Laddomada and Man-drano hold title to two residential units and four parking units numbered 4, 7, 11 and 12. Defendant Schofield Marina LLC, which is solely owned by Mandrano and Laddomada, holds title to the 40 marina units.
It is undisputed that Superstorm Sandy damaged the marina’s seawall, boathouse, docks, gangways and bridges. By decision and order dated September 2, 2014, the New York City (NYC) Environmental Control Board fined the condominium $1,200 for the defendants’ storage of miscellaneous construction debris and $800 for the crane they stored on the lower level parking lot. Defendants maintain that plaintiff is responsible for the marina’s repair and commenced an arbitration proceeding before the American Arbitration Association in July 2015, approximately one year after the underlying action was filed in August 2014. A series of conferences with the parties over the course of several months resulted in defendants’ removal — at the court’s direction — of the crane, two junked cars and extensive debris proliferating in the lower level parking lot. Although this resolved a central issue, the parties are unable to reach agreement as to their remaining contentions.
The defendants’ cross motion for a stay pending arbitration is denied since the issues before this court are distinct. Here, the Board seeks (1) a declaratory judgment that defendants acted contrary to the condominium’s governing documents by constructing a storage room at the first level parking garage and appropriating the lower parking level for the marina’s exclusive use; (2) a permanent injunction requiring defendants *1105 to empty the storage room, pay related fines, restore the lower parking level and remove their property therefrom; (3) money damages based on the diminished value of the condo units; and (4) costs and fees.
Pertinent Provisions
Condominiums are governed by Real Property Law article 9-B, commonly known as the Condominium Act, which sets forth the statutes applicable to condominiums, a hybrid form of real property ownership created by statute. (Board of Mgrs. of Vil. View Condominium v Forman, 78 AD3d 627 [2d Dept 2010].) Pursuant to the Condominium Act, each unit owner holds a real property interest in his or her unit (Real Property Law § 339-g), an exclusive possessory interest in that unit (Real Property Law § 339-h) and an undivided interest in the condominium common elements as set forth in its declaration (Real Property Law § 339-i).
Here, article VI, § 6.1 of the condominium declaration provides that the common elements of the condominium consist of the entire property including (1) general common elements (the land, improvements other than the buildings and all apparatus, installations and facilities); (2) boatel common elements (the residential building); (3) marina common elements (other than the slip-units); and (4) parking common elements (other than the parking units).
Article VI, § 6.7 provides that the “elements shall remain undivided” and no unit owner or other person may divide them unless expressly permitted by article XIX[1] and bylaws § 5.5.[2]
Article XVI, § 17.1 states that “any provision of the Declaration may be added to, amended, modified or deleted by the vote of at least eighty percent (80%) in number and in Common Interest of all Unit Owners, taken in accordance with the ByLaws.” No amendment is effective until it is recorded with the City Register. Any such amendment “shall be executed by the Condominium Board as attorney-in-fact for the Unit Owners, coupled with an interest.”
*1106 Article XVI, § 17.3 provides that if an amendment to the declaration on behalf of the unit owners or condominium Board requires the approval of a specified percentage of unit owners,. (1) an original executed certification of the secretary or an assistant secretary of the condominium must be attached to the amendment, (2) certifying that the requisite number and percentage of unit owners approved the amendment at a duly constituted meeting, (3) describing the number and percentage of unit owners so consenting, and (4) stating the date and time of the meeting.
Section 4.7 (f) of the condominium bylaws provides that each unit owner is entitled to cast one vote for each .0001% of any common interest appurtenant to such owner’s unit. The parties agree that the cumulative vote of all unit owners equals one.
Garage Enclosure
Article VII, § 7.3 of the condominium declaration provides that parking units may only be used for the noncommercial parking of a private motor vehicle.
Defendants acknowledge that they converted their four parking units into a floor-to-ceiling storage structure within the first level parking garage. In Cohen v Board of Mgrs. of 22 Perry St. Condominium (278 AD2d 147 [1st Dept 2000]), the First Department upheld the authority of the Board of Managers to grant a one-year license, terminable by either party, to enclose a portion of the hallway space in exchange for a fee proportional to the percentage allocated to the utilized common element. That is not the case here, where the defendants wrongfully converted their parking units to a private enclosure. On June 25, 2014, the NYC Environmental Control Board issued a violation for work without a permit that resulted in the aforementioned $1,200 fine. Defendants’ use of their parking units is contrary to both the condominium declaration and the building code.
Plaintiff’s motion for a permanent injunction is accordingly granted to the following extent. Defendants are ordered to restore their four parking units to their lawful use forthwith; remove the storage enclosure; arrange for a re-inspection by the City; and pay all related costs and fines.
Lower Level Parking Lot
At issue are the parking common elements. Dr. Enrique Davis, the president of plaintiff Board of Managers, asserts by affidavit that the defendants “appropriated the lower parking *1107 lot, which constitutes a portion of the Common Elements of the Condominium” without plaintiff’s consent and in continuing violation of the condominium’s governing documents. The value of the condominium units is allegedly diminished because access to the lower level parking lot was denied; locks were placed at its access gates; unsightly storage areas were created; debris was strewn throughout; a crane and two junked cars were parked at the premises; and necessary repairs remain outstanding. Some of these conditions remain and some were corrected only recently. At the court’s direction, for example, plaintiff was provided with a key to the lot in July 2016.
Defendant Laddomada maintains in his affidavit that the lower level parking lot has always been used to service the marina since, as a public facility, it cannot function without adequate parking. Defendants argue that by virtue of a 1999 amendment to the declaration passed at a time when Mr. Laddomada was Board president, they are entitled to exclusive use of the lower level parking lot.
At issue is whether a vote was cast during the October 21, 1999 annual unit owners meeting that changed the designation of the lower parking lot from a condominium common element to a marina common area under the defendants’ exclusive control. According to the annual meeting notice annexed to the affidavit of defendant Laddomada, the October 21, 1999 meeting agenda included:
• Election of members of Board of Directors
• Amendments to the declaration and bylaws
• Delinquent 1991-1992 real estate taxes
• Color selection for repainting of the outside of our building
• Y2K preparation
• Improvements for the year 2000
• Certified Financial Audit for fiscal year 1998.
Nominated for re-election to the Board of Directors are the following individuals:
• Dr. Enrique Davis
• Robyn Lobe
• John Iovieno
• Maura Mandrano
• Paul Laddomada
*1108 Defendants do not provide the actual agenda or other documentation that sets forth the amendments considered at the meeting that night. Instead, defendants proffer the affidavit of Eileen M. Sepp, the owner of residential unit 2-H, who avers that at the request of defendant Mandrano, she tallied the votes cast for the Board elections, the proposed amendments and other votes on condominium matters. Ms. Sepp states that the October 21, 1999 meeting was “important” since it was the first annual unit owners meeting:
“On the evening of the meeting, Ms. Mandrano asked if I would tabulate the votes to keep track of which candidates for the Board were elected, which proposed amendments were passed (or defeated), and the results of any other votes on Condominium matters. A copy of my tally sheet on the Board member elections from that night is attached as Exhibit H . . .
“All proposals put to a vote that evening of October 21, 1999 were duly passed with the requisite number of common interests voting in favor.
“Among the proposals passed was an amendment to the Declaration designating the lower parking lot at the Condominium as a Marina Common area. As with the proposal and election of Board members, I personally tabulated the votes on this proposal.
“While I personally voted against the proposed amendment, it did duly pass. Indeed, as far as I can remember, I was the only Unit Owner who publicly took a position against that amendment.”
Defendants submit the sign-in sheet for the annual meeting and the tally sheet for the Board elections, each bearing signatures, but provide no other tally sheets. Although Ms. Sepp states that she tallied the votes at the meeting, it is defendant Laddomada who incorporates in his affidavit a typewritten tally to purportedly establish that an 80% majority vote was cast “on the amendment to the Declaration providing for the lower parking lot to be designated as Marina Common area.”
The defendants submit an endorsement page to establish that the Seventh Amendment to the declaration was duly filed with the City Register pursuant to Real Property Law § 339-s. The filing of this pivotal amendment was effected, however, on *1109 May 13, 2015 by mmandrano@yahoo.com[3] — an email address— nearly one year subsequent to thé 2014 filing of this action and approximately 16 years after the vote allegedly cast at the annual meeting in 1999. Defendants proffer no explanation for the extensive delay.
The Seventh Amendment to the condominium declaration states in pertinent part:
“The Declaration of the Sailmaker at City Island Condominium is amended as follows, in compliance with the legally executed votes taken at the Annual Meeting of Unit Owners on October 21, 1999, at 7:30 p.m.:
“8. The lower parking area, or Marina Parking Lot, shall remain a Marina Common area for marina use and parking. These spots may not be assigned to residential units.”
Conclusion
The common elements of the condominium are proportionately owned by all its unit owners. By amending its declaration — with the consent of its unit owners — the condominium can redefine its common elements and give a unit owner exclusive use of a space that was previously common to all. Here, article VI clearly states that the lower level parking lot is a “parking common element” that belongs to the condominium; any amendment of this designation requires the approval of 80% of all unit owners. (Art XVI, § 17.1.)
After careful consideration, the court declines to credit the Sepp affidavit to the extent that it is based on her memories of an event that occurred 16 years ago.
Significantly, the Seventh Amendment filed with the City Register — 16 years after the alleged vote — also lacks corroboration. Article XVI, § 17.1 requires that any amendment be “executed by the Condominium Board as attorney-in-fact for the Unit Owners, coupled with an interest.” Contrary to the requisites of declaration article XVI, § 17.3, the filing did not contain an original executed certification of the condominium’s secretary or an assistant secretary of the condominium *1110 (1) certifying that the requisite number and percentage of unit owners approved the amendment at a duly constituted meeting and (2) describing the number and percentage of unit owners so consenting.
The absence of the certification is significant for yet another reason. The “presenter” of the Seventh Amendment was mmandrano@yahoo.com, an email address. Real Property Law § 339-e (10) defines “[p]erson” to mean a “natural person, corporation, partnership, association, trustee or other legal entity.” Business Corporation Law § 102 (a) (1) defines an “[ajuthorized person” as a “person, whether or not a shareholder, officer or director, who is authorized to act on behalf of a corporation.” To the extent that email addresses fall outside these definitions, this court determines that an email address is not a person. The court accordingly declares void the Seventh Amendment since its filing cannot be effected by a nonperson.
Defendants’ documents raise a question as to whether a fraud upon the court was intended.
The plaintiff’s motion for summary judgment is accordingly granted. The court declines to consider the defendants’ argument that plaintiff lacks standing to sue, an issue conveniently not raised in their arbitration claim against the very same plaintiff.
The plaintiff’s application for a permanent injunction is also granted. Defendants are directed to remove all remaining property including storage bins from the lower level parking lot within 20 days after service of a copy of this decision and order. The lower level parking lot is a condominium common element; plaintiff is accordingly deemed responsible for any storm-related repair.

. The articles of the declaration are unfortunately misnumbered starting with article X. There are two article Xs followed by article XI. As a result, article XII contains paragraphs 13.1-13.2. In similar fashion, article XVI contains paragraphs 17.1-17.4 which pertain to the amendment of the declaration. Article XIX references waivers, not amendments, and is therefore not dispositive.

. Bylaws § 5.5 references casualty or condemnation; neither is in issue here.

. According to the Seventh Amendment endorsement page, presenter mmandrano@yahoo.com is located at 190 Schofield Street, 3B, Bronx, New York 10464. According to the October 21, 1999 annual meeting sign-in sheet, defendants Laddomada and Mandrano own residential units 3B and 3C. Defendant Mandrano does not proffer an affidavit.